IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robbie Collins, ) | Civil Action No. 2:22-01391-RMG-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Samantha Bernedette, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil action on May 2, 2022. Plaintiff alleges that Defendant Samantha Bernedette ("Defendant"), a South Carolina Department of Corrections ("SCDC") nurse, acted with deliberate indifference to a serious medical need in failing to arrange for Plaintiff to receive a second Moderna COVID-19 vaccine dose after he requested her assistance in obtaining the second dose. (Dkt. No. 1-1 at 1; 17). Before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 193.) Pursuant to 28 U.S.C. §636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge. For the reasons set forth herein, the undersigned recommends granting Defendant's' Motion.

**BACKGROUND**

In this civil action, Plaintiff alleges deliberate indifference to his serious medical needs. (Dkt. No. 1; Dkt. No. 17.) In his verified amended complaint,[1] Plaintiff alleges that he was transferred to McCormick Correctional Institution ("McCormick") for treatment of "post-Covid-19 symptoms which entailed memory loss, shortness of breath, [and] sporadic respiratory attacks."

---

[1] *Goodman v. Diggs*, 986 F.3d 493, 495 n.2 (4th Cir. 2021) ("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)).

1

(Dkt. No. 17 at 1.) Plaintiff alleges that "on or about July 2021, the [Johnson & Johnson] vaccination was offered to the general population." (*Id.*) Plaintiff alleges that when he explained to a nurse that he had a family history of blood clots, the nurse arranged for him to receive the Moderna vaccine for the prevention of COVID-19, "which is a two dose shot." (*Id.*) "That afternoon," Nurse Grant Morris "came to the dorm and gave [Plaintiff] a shot," which Morris said "was the Moderna." (*Id.*) Morris told Plaintiff "he would come back in a week and give [Plaintiff his] second dose." (*Id.*)

According to Plaintiff, after weeks passed without a second dose, he "began to write staff request [sic] to Nurse Bernedette because she is the head nurse." (*Id.*) Plaintiff "explained that [he] never received [his] second dose," but he received no response to his requests. (*Id.* at 1–2.) Plaintiff alleges he "then began walking to medical to talk face to face with Nurse Bernedette. Upon speaking with her, [Plaintiff] told her that [he] wanted to get vaccinated because [he] had serious post-Covid complications and [he] wanted to protect [him]self." (*Id.* at 2.) Plaintiff alleges Nurse Bernedette "said she was aware of [Plaintiff's] situation and that she would handle it." (*Id.*)

After "months passed" without the second dose, Plaintiff complained to Associate Warden Turner that he "was being denied the vaccination." (*Id.*) Plaintiff alleges Turner "said she would look into it."[2] (*Id.*) According to Plaintiff, he "caught the Delta Strain of COVID-19" in February 2022 and his "symptoms [were] unbearable." (*Id.*) Plaintiff alleges his "body ached for weeks . . . [and] it was torture just to breathe." (*Id.*) Based on the foregoing, Plaintiff alleges he was "subjected to deliberate indifference in violation of his 8th Amendment constitutional right." (*Id.* at 3.) He asks for compensatory and punitive damages. (*Id.*)

---

[2] Morris and Turner were dismissed as defendants on October 31, 2023. (Dkt. No. 133.)

Relevant here, on December 14, 2023, the District Judge issued an Order finding that "Plaintiff's claim that his second COVID-19 infection and resulting complications were caused by his failure to obtain his second Moderna vaccine requires expert testimony." (Dkt. No. 151 at 1.) In this Order, the District Judge instructed the undersigned to "establish a briefing schedule granting Plaintiff reasonable time to obtain a qualified expert in support of his claim and permitting Defendant Bernedette an opportunity to bring dispositive motions (Daubert and summary judgment) regarding the same." (*Id.* at 2.)

Plaintiff subsequently filed an appeal of the December 14, 2023 Order to the Fourth Circuit. (Dkt. No. 160.) The Court administratively stayed this action on January 16, 2024, pending resolution of Plaintiff's appeal. (Dkt. No. 166.) On October 24, 2024, the Court lifted the stay in this action, after the Fourth Circuit dismissed Plaintiff's appeal. (Dkt. No. 173; 176; 177.) On November 19, 2024, the undersigned issued an Order denying Plaintiff's motion to appoint counsel and motion to appoint expert. (Dkt. Nos. 174; 175; 187.) In the Order, the Court advised Plaintiff he had until January 6, 2025 to obtain a qualified expert in support of his claim and set the dispositive motions deadline for January 26, 2025. (Dkt. No. 187.) On December 30, 2024, Plaintiff filed his "Response to Qualified Expert," which includes: (1) multiples print outs from the website for the Center for Disease Control ("CDC"); and (2) excerpts from *United States v. Singh*, 525 F. Supp. 3d 543 (M.D. Pa. 2021), wherein the court cited information from the CDC when considering the plaintiff's motion for compassionate release due to the COVID-19 pandemic and his alleged particular susceptibility to the virus. (Dkt. No. 192.)

On January 7, 2025, Defendant filed a Motion for Summary Judgment. (Dkt. No. 193.) The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to

3

adequately respond to the Motion. (Dkt. No. 194.) Plaintiff filed a response in opposition on February 3, 2025 (Dkt. No. 199), to which Defendant filed a reply on February 5, 2025 (Dkt. No. 200). The Motion has been fully briefed and is ripe for review.

## STANDARDS

### A.	Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Pub'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a court considers the motion, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (*quoting Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

B.     **Deliberate Indifference to a Serious Medical Need**

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022). A deliberate indifference claim has both an objective and subjective component. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "That is, the plaintiff must demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A medical condition is serious enough to satisfy the objective component if it has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citing *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). The subjective component has two subparts: "a plaintiff must show the prison official (1) had actual knowledge of the risk of harm to the inmate and (2) recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Pfaller*, 55 F.4th at 445 (citing *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) ("An actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

While mere negligence is not enough, *id*. (citing *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)), evidence of an official's "actual purposive intent" is not required, *id*. (citing

*De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013)). "Instead, deliberate indifference is most akin to criminal-law recklessness." *Id.* "[S]o long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'" *Id.* (citing *Farmer*, 511 U.S. at 844. Indeed, an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

"There is no per se rule that expert testimony is necessary to establish an Eighth Amendment" claim of deliberate indifference to a serious medical need. *Phoenix v. Amonette*, 95 F.4th 852, 858–59 (4th Cir. 2024).[3] "Instead, the question is whether, in the context of a particular case, the plaintiff has produced sufficient evidence—of whatever kind—to create a genuine dispute of material fact about each of the required elements": a serious medical need and a deliberately indifferent state of mind. *Id.* Whether expert testimony is necessary depends on the nature and complexity of the medical issues in a particular case and what other evidence is available in the record.

Relevant here, a court in this circuit recently found that "[t]he fact that [the plaintiff inmate] did not receive the [COVID-19] vaccine when requested, does not, without more, suggest that [prison staff] consciously disregarded the risk posed by COVID-19." *Lunsford v. N.C. Dep't of Corr.*, No. 5:22-CT-3384-D, 2023 WL 4144837, at *2 (E.D.N.C. May 24, 2023) (quoting *Burrell v. Annucci*, 2022 WL 4618737, at *8 (N.D.N.Y. Sept. 30, 2022) (citing *Brown v. Clark*, 2022 WL 3355805, at *4 (W.D. Ky. Aug. 12, 2022) ("Brown's complaint that the prison hadn't yet administered a requested [COVID-19] vaccine dose, standing alone, does not plausibly suggest

---

[3] The Fourth Circuit Court of Appeals issued this published opinion on March 18, 2024.

6

that the defendants consciously disregarded the risks posed by Covid.")). Rather, to prevail on his § 1983 claim based on his failure to obtain his second Moderna vaccine, Plaintiff must show that Defendant "knew of an excessive risk to [Plaintiff's] health if he was not given [the second dose of the Moderna] vaccine, and that [she] disregarded that risk." *Pers. v. Whited*, No. 7:20-cv-00146, 2022 WL 885097, at *5 (W.D. Va. Mar. 25, 2022) (considering § 1983 deliberate indifference claim based on the denial of a timely flu shot and plaintiff's subsequent illness; "In order to prevail, he must show that prison officials . . . knew of an 'excessive risk' to his health if he was not given a flu vaccine, and that they 'disregarded' that risk.").

## DISCUSSION

As noted above, Plaintiff alleges Defendant Bernedette acted with deliberate indifference to a serious medical need by failing to arrange for Plaintiff to receive a second Moderna COVID-19 vaccine dose after he requested her assistance in obtaining the second dose. (Dkt. No. 17). Below, the undersigned first considers the evidence most relevant to Plaintiff's § 1983 claim before considering the merits of his claim.

### A.     Evidence

#### 1.     Plaintiff's Vaccination History

The record shows that Plaintiff received his first dose of the Moderna vaccine from Grant Morris, a licensed practice nurse, on May 14, 2021, with the "date booster required" listed as June 11, 2021. (Dkt. No. 91-2.) The consent form signed by Plaintiff and Morris shows that Plaintiff indicated he was not sick that day and he had never received "passive antibody therapy as treatment for COVID-19." (*Id.*)

The record includes an affidavit from Melanie Davis, the Director of Infectious Disease Management at SCDC, dated February 27, 2023. (Dkt. No. 127-2.) Davis avers that, due to her

position, she has "access to inmate records regarding the treatment and diagnosis of infectious diseases, including COVID-19." (*Id*. at 2.) Davis explains that "SCDC began administering COVID-19 vaccines to inmates in March 2020." (*Id*.) She continues,

> With the other mitigation strategies being performed and the limited resources and staff, SCDC made the decision to utilize the Johnson & Johnson vaccine for male inmates because it was an effective one-dose treatment while other COVID-19 vaccines required two doses. SCDC monitored inmates who tested positive for COVID-19 and if those symptoms worsened, those inmates would receive emergent medical care. It was several months into the pandemic before any type of treatment was available, and even then, it was limited.

(*Id*.)

> Turning to the events at issue in this action, Davis avers,
>
> In May of 2021, SCDC, with assistance from the South Carolina National Guard, began a mass vaccination wherein all inmates were offered the Johnson & Johnson vaccine. On May 13, 2021, SCDC offered inmate Robbie Collins, #290946, the Johnson & Johnson vaccination. Mr. Collins refused the vaccine due [to] his reporting of prior blood clot issues. Mr. Collins spoke with me and the pharmacy staff at McCormick Correctional Institution. We informed Mr. Collins that the only vaccine that was available that day at McCormick Correctional Institution was the Johnson & Johnson vaccine and that the FDA had cleared it to be used. The day after Mr. Collins refused the Johnson & Johnson vaccine, the SCDC/National Guard vaccination team traveled to another institution, Camille Graham, to administer COVID-19 vaccines. Camille Graham is a female facility. There were a few doses of the Moderna vaccine remaining that would have been discarded that evening if not used. The remaining Moderna vaccine was transported to McCormick and was administered to Mr. Collins on May 14, 2021.
>
> As evidenced by the attached COVID-19 Vaccine Consent Form, Mr. Collins was given the first dose of the Moderna vaccine on May 14, 2021 by Grant Morris, LPN. Mr. Morris left the employment of SCDC on August 13, 2021. The COVID-19 Vaccine Consent Form contains a future booster date of June 11, 2021.

(*Id.* at 3.)

In her affidavit, Davis explains that due to an "inadvertent" error, Plaintiff's Vaccine Consent Form was not entered into "the SCDC/DHEC databases." (*Id*.) More specifically, Davis states:

8

> Upon research of my emails, I received the aforementioned COVID-19 Vaccine Consent Form for Mr. Collins on May 17, 2021 from McCormick Correctional Institution. I inadvertently failed to enter the documentation that Mr. Collins received his first dose of the Moderna vaccine into the SCDC/DHEC databases. Thus, local SCDC medical staff who would review the databases to determine Mr. Collins' vaccine history, would not be aware that he received his first dose of the Moderna vaccine.
>
> Once an inmate's COVID-19 vaccination record is entered into the SCDC database, the SCDC pharmacy will note the date that the booster shot is due. The pharmacy will then send the booster vaccine to the particular SCDC institution so it can be administered to the inmate. In this instance, the SCDC pharmacy did not receive notice of the first vaccine so the booster vaccine was not forwarded to McCormick Correctional Institution for Mr. Collins.

(*Id*. at 3–4.)

Davis avers that Plaintiff "had tested negative for COVID-19 on November 4, 2020, August 31, 2021, February 1, 2022, and April 11, 2022. Mr. Collins refused testing for COVID-19 on October 25, 2021." (*Id*. at 4.) She further states that Plaintiff "tested positive for COVID-19 on February 9, 2022." (*Id*.) Davis avers that Plaintiff refused offers from McCormick medical staff for the Johnson & Johnson vaccine on March 22, 2022 and July 6, 2022. (*Id*.) "On July 22, 2022, Mr. Collins received a dose of the Moderna vaccine. He received his second dose of the Moderna vaccine on August 8, 2022." (*Id*.; *see also* Dkt. No. 119-1 at 2–3.)

        **2.**        **Defendant Bernedette Incident Report**

According to an incident report completed by Defendant Bernedette on July 7, 2022, Plaintiff was "notified . . . on multiple occasions" about the March 22, 2022 vaccination clinic. (Dkt. No. 127-1 at 73.) The report further states, "During the vaccination clinic, I/M Collins decided to become agitated, aggressive, & demanding regarding his failure to receive, in his opinion, prompt dental care." (*Id*.) Plaintiff was notified "that after ALL of the requests he had submitted [regarding the vaccine], that he needed to prioritize receiving his vaccination." (*Id*.) Plaintiff did not receive the vaccination that day. (*Id*.)

9

Bernedette further states in her report,

> After reaching out to our pharmacy on 06-28-2022, Sara Kloke, PharmD - notified me that she would be sending the vaccination for I/M Collins on 07-06-2022, however. it would be a FIRST DOSE as there is NO documentation in the federal and/or DHEC system that a FIRST DOSE had ever been administered. I also checked here at the institution in the Warden's jacket. No card was located.

(*Id.*)

According to Bernedette, Plaintiff refused an offer to receive the Johnson & Johnson vaccine on July 6, 2022, claiming a "family history of blood clots." (*Id.*) Bernedette states she then "contacted Sara Kloke, PharmD for assistance," and she "was informed that medical documentation MUST be provided in order for an inmate to receive the Moderna vaccination VS. the J & J." (*Id.*) Bernedette notes, "[t]his inmate currently has no supporting diagnosis of PE's. I have also reached out to Melanie Davis, RN – for further assistance, as I have completed all I am able in this case." (*Id.*) In this same report, Bernedette states that she "received an email from A/W Turner" on July 5, 2022, stating that Plaintiff "had initiated a lawsuit due to being denied a COVID booster vaccination here at MCCI." (*Id.*)

### 3.  Plaintiff's Relevant Medical Records

A "communications message" entered by a SCDC nurse on January 30, 2022, states that she "went down to inmate dorm to check on" Plaintiff after he reported "he thinks his asthma is acting up." (Dkt. No. 127-1 at 69.) Plaintiff informed the nurse "that he is not using his Advair Diskus 250mcg-50mcg" because "he does not like the way it makes him feel, it irritates him." (*Id.*) The nurse informed Plaintiff "that he needs to discuss his non-compliance with the Doctor" and she "began to educate inmate on the importance of taking his medication as prescribe[d] and inmate then voiced he was not going to take the Advair Diskus." (*Id.*) The nurse then "informed

10

inmate that his O2 SATs were 93-95 % on room air and then repeated that he needs to take his medication as prescribed." (*Id*.)

A clinical record states that Plaintiff tested positive for Covid-19 the "morning" of February 9, 2022. (*Id*. at 70.) There are no records indicating Plaintiff required medical treatment for his symptoms after testing positive.[4]

### 4.    Plaintiff's Inmate Requests and Grievances

Although there are inmate requests and grievances from Plaintiff in the record, none are directed to medical generally or to Defendant Bernedette specifically. (Dkt. Nos. 91-5 at 3–5; 101-3; 101-4 at 1; 101-5; 101-6; 101-7; 101-8.) Relevant here, Turner has submitted an affidavit in which she avers, "I did not receive any written communications or requests from inmate Collins regarding any COVID issues or medical treatment." (Dkt. No. 91-5 at 1.) Turner maintains that the written inmate requests submitted by Plaintiff "were handled by another SCDC employee," Michel'le Waldo, whose "employee number is C064879," and those "inmate requests were forwarded to the medical department." (*Id*.) Turner further avers,

> I became aware of inmate Collins' medical treatment concerns when he approached me in the yard and expressed those concerns to me. I immediately traveled to the medical department and relayed this information to medical personnel. I was informed by medical personnel that inmate Collins' concerns were being appropriately addressed. The next time I became aware of any issue with inmate Collins was when I was served with this Complaint. . . . On the one occasion when I became aware of inmate Collins' medical concerns, I brought those to the attention of the medical staff and relied upon them to make appropriate medical decisions.

---

[4] Defendants have submitted a "Medical Summary" of Plaintiff's "Treatment," seemingly drafted by defense counsel, which provides the following summary from February 9, 2022: "Covid swab – positive. Collins stated he was experiencing shortness of breath due to new diagnosis of Covid 19. Vital signs – 98% on room air, temp was 98.6. Educated inmate on possibility of being asymptomatic. BP slightly elevated due to anxiety diagnosis of Covid." (Dkt. No. 127-1 at 4.) Because the undersigned cannot find this specific underlying medical entry, and Defendants do not otherwise aver to the accuracy of this summary, the undersigned does not consider it evidence at summary judgment.

(*Id.*) Relatedly, Plaintiff has submitted Turner's responses to Plaintiff's interrogatories in which Turner indicates she spoke with Defendant Bernedette "about vaccinating Plaintiff" and was "advised . . . that the matter had already been addressed with the Plaintiff." (Dkt. No. 101-9.) No details are provided about when this conversation took place, however.

The parties have provided the following written inmate requests and grievances submitted by Plaintiff: In a Step 1 grievance dated August 9, 2021, Plaintiff complains,

> On July 27, 2021, I had a respiratory attack due to my post COVID-19 infection. Ofc. Jones called medical so I could receive the breathing treatment. Nurse Morris told the Ofc. that he didn't have time for me and refused me medical treatment. This is deliberate indifference in violation of my 8th Amendment Right. I have spoken with head nurse Bernedette about my situation and my health problems due to my infection of COVID-19 and my concerns is being ignored. I was partially vaccinated with the Moderna vaccine which is a two-shot treatment and I only received one shot months ago.

(Dkt. No. 101-4 at 1.) The response to this grievance is not in the record.

On August 27, 2021, Plaintiff submitted an inmate request stating, "Medical gave me the moderna vaccination due to my history of bloodclots instead of the johnson & johnson but they only gave me one shot of a two shot treatment and that was in [M]ay. [T]his is deliberate indifference and puts my health in serious jeopardy." (Dkt. No. 101-3.) The response to this request lists Waldo's employee number as the "Author" and states "Send paper staff request to medical." (*Id*.) On October 18, 2021, Plaintiff submitted another inmate request stating, "AW Turner I was [supposed to] get the moderna covid shot [and have] not received it yet. [I] was given one dose [of] moderna by nurse milker [sic] but never rec[eived] the other." (Dkt. No. 91-5 at 3.) The response to this request again lists Waldo's employee number as the "Author" and states "Request forwarded to medical." (*Id*.)

On November 15, 2021, Plaintiff submitted another inmate request stating, "I was given one shot of the moderna vaccine and never receive[d] the second shot. [M]s Turner I have wr[itten]

12

you numerous times about this." (*Id.* at 4.) The response to this request again lists Waldo's employee number as the "Author" and states "Your last request was forwarded to medical. Please send a paper request to medical." (*Id.*) On February 10, 2022, Plaintiff submitted another inmate request stating, "[W]arden Turner I have w[ritten] you many times explaining I was being denied the vaccine. [I] wrote medical like you said several times. [N]ow I have the covid again. [You] have denied me your help to make medical vaccinate me." (*Id.* at 5.) The response to this request again lists Waldo's employee number as the "Author" and states "I will get with AW Turner. Your request was forwarded to medical." (*Id.*)

On February 19, 2022, Plaintiff submitted another Step 1 grievance stating,

> I wrote to AW Turner . . . explaining . . . that I have contracted Corona Virus again. I have been writing AW Turner and medical for a Corona Vaccination and they refused to administer it to me. . . . I have wr[itten] AW Turner each time asking that Medical Vaccinate me and I have been denied.

(Dkt. No. 101-8 at 1.) He indicates he attempted informal resolution of his grievance when he "wrote medical numerous staff request[s]." (*Id.*) The response to this grievance is dated March 2, 2022. It states that the "grievance is resolved" because, *inter alia*, Plaintiff "will be able to receive a COVID vaccine" when the "COVID team [is] at McCormick on 3/22/2022." (*Id.* at 2.) The response contains the "Warden Signature," which does not appear to belong to Turner. (*Id.*)

### 5.    Related Case

The undersigned takes judicial notice that Plaintiff has filed a separate federal lawsuit against Bernedette and other SCDC medical staff, alleging, *inter alia*, that the first and second doses of the Moderna vaccine he received in July and August 2022 caused him to develop painful "knots" in his arms, stomach, and throat.[5] *See Collins v. Burdette et al* 2:24-cv-00960-RMG-MGB;

---

[5] *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) (explaining that a federal court may take judicial notice of the contents of its own records, as well as those records of other courts); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (same).

Dkt. No. 2 at 1–2. He complains that because he "developed a knot on [his] arm at the injection site" and "shortness of breath" after receiving the first dose of the Moderna vaccine in July 2022, medical staff should have performed "some test[s]" before administering the second dose. *Id*.

### B.     Analysis

Upon careful review, the undersigned finds that Plaintiff's deliberate indifference claim fails as a matter of law. As an initial matter, the materials submitted by Plaintiff do not constitute expert testimony. As noted above, Plaintiff provides printouts from the website for CDC and citations to the CDC in *United States v. Singh* to support his claim. (Dkt. No. 192.) He does not, however, offer any expert witness testimony to which an analysis under Rule 702 of the Federal Rules of Evidence would be warranted. Plaintiff's reliance on *Singh* is misplaced. In *Singh*, an out-of-circuit district court cited information from the CDC when considering the plaintiff's motion for compassionate release. 525 F. Supp. 3d at 544–48. As recently noted by a court in this circuit, however, "the evidentiary standard is relaxed in sentencing matters, and a district court may consider relevant information without regard to its admissibility under the Federal Rules of Evidence." *United States v. Clark*, No. 1:19-CR-152-1, 2021 WL 1254477, at *1 (M.D.N.C. Apr. 5, 2021) (citing *United States v. Hernandez-Villanueva*, 473 F.3d 118, 122 (4th Cir. 2007); U.S.S.G. § 6A1.3(a) (stating that for sentencing determinations, "the court may consider relevant information without regard to its admissibility under the rules of evidence"); Fed. R. Evid. 1101(d)(3) (providing that the Federal Rules of Evidence are inapplicable to "miscellaneous proceedings such as: . . . sentencing; granting or revoking probation or supervised release; and considering whether to release on bail or otherwise.")).

Moreover, the CDC materials provided by Plaintiff and cited in *Singh* do not address whether Plaintiff's second COVID-19 infection and resulting complications were caused by his

failure to obtain his second Moderna vaccine. Nor do they address whether Plaintiff's failure to timely receive his second Moderna vaccine exposed him to a substantial risk of serious harm, given Plaintiff's particular alleged circumstances.

Here, an average juror has no basis in common knowledge or ordinary experience to determine whether Plaintiff's failure to timely receive his second Moderna vaccine caused Plaintiff's second COVID-19 infection or worsened his resulting symptoms.[6] Likewise, an average juror has no basis in common knowledge or ordinary experience to determine whether Plaintiff's failure to timely receive his second Moderna vaccine exposed him to a substantial risk of serious harm, given Plaintiff's particular alleged circumstances.[7] Accordingly, given the nature and complexity of the medical issues in this particular case and the lack of sufficient evidence in the record that would aid a jury in understanding the relationship between the dosing of the Moderna vaccine and COVID-19, the undersigned finds expert testimony is required to establish Plaintiff's deliberate indifference claim against Defendant Bernedette. *See Dhillon v. Princess Cruise Lines, Ltd.*, 2023 WL 5696529, at *1 (9th Cir. Sept. 5, 2023) (expert testimony required in relation to plaintiff's COVID-19 claims—"Plaintiffs allege that they contracted COVID-19 on the *Grand Princess*, that COVID-19, and not other illnesses, caused the symptoms that they experienced, and that lasting injuries were caused by the COVID-19 infections they contracted aboard the *Grand*

---

[6] Additionally, to the extent Plaintiff's claim is construed as complaining of the alleged delay in receiving a complete vaccination from COVID-19, Plaintiff has failed to establish, through expert testimony or otherwise, that the delayed treatment "*result[ed]* in some substantial harm" to him, such as "marked exacerbation of [his] medical condition or frequent complaints of severe pain." *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) ("Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless the delay *results* in some substantial harm to the patient, such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain.") (internal quotation omitted) (emphasis in original); *Stritehoff v. Green*, No. CIV. CCB-09-3003, 2010 WL 4941990, at *5 (D. Md. Nov. 30, 2010) (dismissing § 1983 claim based on delay in dental treatment because "plaintiff has failed to show that" *inter alia*, "any delay in receipt of dental evaluation and treatment caused by the failure to escort him on that date was the proximate cause of exacerbating his dental problems").

[7] Indeed, Plaintiff's more recent lawsuit alleging medical complications caused by the Moderna vaccine underscores the complexity of the medical issues in this case.

15

*Princess*. . . . Because the nexus between Plaintiffs' voyage on the *Grand Princess* and their injuries requires specialized knowledge about the nature of COVID-19 infections, symptoms, and transmissibility, expert evidence was necessary to establish a causal connection; Plaintiffs' testimony alone was insufficient."); *Wilson v. Ponce*, 2022 WL 2155119, at *7 (C.D. Cal. Feb. 2, 2022) ("Whether the current conditions of confinement at FCI Terminal Island create an objectively, unreasonable risk from a COVID-19 infection is not a matter of common knowledge to be decided by a layperson.").

Because Plaintiff has failed to provide the requisite expert testimony to support his § 1983 deliberate indifference claim, the undersigned recommends that Defendant Bernedette is entitled to summary judgment. *See Coleman v. N. Carolina Dep't of Pub. Safety*, No. 3:20-cv-570-MOC-DSC, 2023 WL 5493586, at *11 (W.D.N.C. Aug. 24, 2023) (granting summary judgment on deliberate indifference claim because, *inter alia*, "Plaintiffs have produced no evidence showing that [inmate's] conditions of confinement caused his symptoms and/or side effects"; noting "[i]n cases involving 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of an injury.'" (quoting *Phillip v. GEO Grp., Inc.*, No. 5:09-CT-3115-FL, 2012 WL 5392120, at *6 (E.D.N.C. Nov. 5, 2012), *aff'd*, 520 F. App'x 215 (4th Cir. 2013))); *cf. Phoenix*, 95 F.4th at 860–61 (considering a § 1983 deliberate indifference claim based on the defendant doctor's failure to provide a gluten free diet to an inmate plaintiff who has celiac disease and finding it "was legal error" for the district court to conclude "that an expert was needed for [plaintiff] to provide 'the presence of an injury caused by [defendant]'"; stating "even without an expert—the record is sufficient for [plaintiff] to prevail on his claim by showing that the 'absence of' the special diet order 'exposed' him 'to a substantial risk of serious harm.'" (quoting *Heyer*, 849 F.3d at 211)).

16

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS Defendant Bernedette's Motion for Summary Judgment (Dkt. No. 193) be GRANTED and this action be dismissed.

**IT IS SO RECOMMENDED.**

February 13, 2025
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).